UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SUZETTE L. MANN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  06-CV-335-SAJ |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | |
| Administration,[1] ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**[2]

Pursuant to 42 U.S.C. § 405(g), Plaintiff Suzette L. Mann (Plaintiff) appeals the decision of the Commissioner denying her Social Security benefits.  Plaintiff asserts that the ALJ erred (1) in his residual functional capacity ("RFC") assessment; and (2) in his credibility analysis. For the reasons discussed below, the Court affirms the decision of the Commissioner.

**1.  FACTUAL AND PROCEDURAL HISTORY**

Plaintiff was born on June 17, 1961,and was 43 years of age at the time of the ALJ's decision. (R. 62, 174.)  She has a high school education and past relevant work as a short order cook, kitchen helper, cashier-checker, fast food worker, and airplane assembly worker.  (*See* R. 74, 82, 174-77.)  She alleges that she became disabled on June 7, 2002, by a broken ankle.  (*See* R. 62, 73-74, 157.)

---

[1]   Effective February 1, 2007, pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue, Acting Commissioner of Social Security, is substituted for Jo Anne B. Barnhart as the defendant in this action.  No further action need be taken to continue this suit by reason of the last sentence of section  42 U.S.C. § 405(g) of the Social Security Act.

[2]   This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

Plaintiff actually broke her ankle on February 14, 2001.  (*See* R. 107-19.)  She had surgery on it the following day and was discharged on February 16, 2001.  Wires and a plate were inserted in and around her ankle to stabilize the fractures within.  In the months following surgery, her ankle appeared to heal well and her surgeon reported that, as of June 27, 2001, Plaintiff was having no problems.  (R. 121-22.)

Approximately six months later, Plaintiff complained of right ankle pain to Donald L. Riley II, D.O., on January 11, 2002.  (R. 124.)  Dr. Riley noted that she had diffuse tenderness over her right ankle joint and diffuse swelling.  However, her ankle joint was stable, and she had no specific effusion or erythema overlying the ankle joint.  Dr. Riley's assessment was that Plaintiff had "probable osteoarthritis of the right ankle."  (*Id.*)

Plaintiff saw Dr. Riley again on April 24, 2002, primarily due to symptoms of bronchitis. (R. 123.)  However, Dr. Riley noted that Plaintiff wanted a refill of naproxen, which she took, along with over-the-counter ibuprofen, to ease the pain in her right ankle.  She complained of swelling in that ankle which improved with naproxen and elevation.  Dr. Riley also noted that Plaintiff wore an ankle brace on her right ankle.  His assessment was: bronchitis, tobacco abuse, osteoarthritis of the right ankle, and "status post open reduction internal fixation of the right ankle." (*Id.*)  As part of his treatment plan, he instructed her to see an orthopedist about her right ankle swelling and pain.  (*Id.*)

On February 15, 2003, Plaintiff presented to the emergency room of a Tulsa Regional Medical Center complaining of right ankle pain.  (*See* R. 127-33.)  Swelling and tenderness about the ankle were noted, and an x-ray revealed a loose "K-wire."  (R. 128-29.)  George Erbacher, D.O., opined that one fragment of K-wire "overlies the Achilles tendon region posteriorly."  (R. 132.)  Plaintiff was informed about the loose wire and

advised to see an orthopedic doctor.  (R. 129.)  She was discharged the same day.  (R. 131.)

Plaintiff filed her application for a period of disability, disability insurance benefits and supplemental security income on January 10, 2004.[3/]  (R. 62-64, 157-59.)  After she was denied benefits at the initial and reconsideration determination levels, she filed a timely Request for Hearing.  Administrative Law Judge (ALJ) Richard J. Kallsnick held the hearing on August 4, 2005 (*see* R. 170-92), and issued an unfavorable decision on September 22, 2005. (R. 13-21.)  Plaintiff filed a Request for Review with the Appeals Council, and the Appeals Council denied Plaintiff's request on May 6, 2006. (R. 5-7.)  Plaintiff now seeks judicial review.

## 2. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social security claims.  *See* 20 C.F.R. §§ 404.1520, 416.920.  Disability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . .

42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act only if his

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy. . . .

---

[3/] Plaintiff protectively filed on December 16, 2003.  (R. 80, 156.)

3

42 U.S.C. § 423(d)(2)(A).[4]

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by substantial evidence.  See 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*.  *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993).  The Court will "neither reweigh the evidence nor substitute its judgment for that of the Commissioner."  *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000); *see Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational.  *Williams*, 844 F.2d at 750.

"The finding of the Secretary[5] as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion.

---

[4] Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510, 416.910 and 404.1572, 416.972).  Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  *See* 20 C.F.R. §§ 404.1521, 416.972.  If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings").  If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled.  If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work.  A claimant is not disabled if the claimant can perform his past work.  If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy.  If a claimant has the RFC to perform an alternate work activity, disability benefits are denied.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

[5] Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security.  P.L. No. 103-296.  For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750. In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance. *Perales*, 402 U.S. at 401. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Williams*, 844 F.2d at 750. This Court must also determine whether the Commissioner applied the correct legal standards. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards. *Glass*, 43 F.3d at 1395.

### 3. ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ found that Plaintiff's ankle problems and morbid obesity were medically severe impairments that significantly limit Plaintiff's ability to do basic work activities. However, the ALJ determined that these impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (R. 20.) In the ALJ's opinion, Plaintiff was unable to perform any of her past relevant work, but there were multiple unskilled and semiskilled sedentary jobs in the regional and national economy that a person with her vocational background and RFC could perform. (R. 21.) The ALJ concluded that Plaintiff was not under a "disability" as defined in the Social Security Act, through the date of his decision, September 22, 2005. (*Id.*)

More specifically with regard to her RFC, the ALJ determined that Plaintiff's allegations regarding her limitations were not totally credible. (R. 20.) In his opinion, she had the RFC to lift/carry 10 pounds occasionally or 5-9 pounds frequently; she could stand/walk 2 hours during an 8-hour workday (although she used a cane to maintain her stability); and she could sit for 6 hours. She would need to change her postural positioning,

but she could operate hand and feet controls. Although she had mild to moderate pain, she could remain attentive and responsive. Further, she could remain alert although she took over-the-counter medications. (R. 20-21.)

### 4. REVIEW

#### A.  Residual Functional Capacity

The ALJ's RFC includes, in part, the findings of consultative examiner Angelo Dalessandro, D.O.  On May 13, 2004, Dr. Dalessandro noted that Plaintiff's gait was normal, although she had a right limp. (R. 135.)  She used a cane, but was able to walk from the door of the treatment room to the table without the cane.  She had no problems getting on or off the examination table. Her ankle had some tenderness, swelling, weakness, and decrease in the range of motion, but there were no other joint deformities or swellings. (*Id.*)  Based on Dr. Dalessandro's assessment, two RFC assessments completed on May 24, 2004 and July 8, 2004, respectively, indicate the restrictions and limitations which were adopted ultimately by the ALJ in his decision. (*See* R. 140-55.) Plaintiff asserts that  the ALJ failed to include all of Plaintiff's limitations in his RFC.

In particular, Plaintiff argues that the ALJ should have discussed and afforded more weight to the recommendation of her treating physician, Dr. Riley, that she see an orthopedic specialist.  Further, she faults the ALJ for not discussing the loose fragment of wire in her ankle, as revealed by x-rays taken at Tulsa Regional Medical Center.  Plaintiff specifically maintains that an RFC indicating that she can stand for two hours is "ludicrous." (Opening Br., Dkt. # 12, at 6.)

"The ALJ is required to give controlling weight to the opinion of a treating physician as long as the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)); *see, e.g., Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). As the Commissioner points out, Dr. Riley did not express an opinion regarding Plaintiff's functional abilities. Dr. Riley's recommendation that Plaintiff see a specialist does not require a finding of disability or any greater degree of limitation than the ALJ found. The ALJ is not required to weigh a recommendation.

The ALJ discussed the medical evidence as well as Plaintiff's subjective complaints. (R. 18-19.) In particular, he noted that Plaintiff complained of pain and swelling to Dr. Riley and that Dr. Riley diagnosed osteoarthritis. (R. 18.) He also noted that Plaintiff was treated in February 2003, the date of her visit to the hospital emergency room. (R. 19.) Subsequent to Plaintiff's visit to Dr. Riley and later, the emergency room, she was examined by Dr. Dalessandro and RFC assessments were made based upon Dr. Dalessandro's findings. The ALJ found, among other things, not that Plaintiff could stand for two hours at a time, but that she could stand and walk a cumulative total of two hours over an eight-hour workday. (R. 19.) The ALJ's RFC assessment is supported by substantial evidence.

**B.     Credibility**

Plaintiff also asserts that the ALJ did not properly evaluate her subjective allegations concerning her impairments. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial

7

evidence." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (quotation omitted). "However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (alteration and quotation omitted).

The ALJ summarized Plaintiff's testimony about her pain and her attempts to relieve it, her inability to walk or drive far, the swelling of her ankle, her use of a cane, and her lack of daily activity. (R. 19.) Then he discounted her testimony as to the severity of her pain, given the medical reports that her ankle fracture had properly healed, the observation by the consultative examiner that her "unassisted gait was safe, stable, and of normal speed," that she had no treatment of her ankle since February 2003, and that she took no prescription medicine for her pain. (*Id.*) Plaintiff takes issue with this analysis because she claims that she cannot afford treatment or prescription drugs. However, as the ALJ noted, effective pain medications are often available at free health clinics. (*See* R. 19.) The Court finds that the ALJ's credibility determination in this case is entitled to deference.

## 5.  CONCLUSION

The Commissioner's decision denying Plaintiff's application for Social Security benefits follows correct legal principles and is supported by substantial evidence. Accordingly, the Court **affirms** the decision of the Commissioner.

It is so ordered this 29th day of November, 2007.

Sam A. Joyner
United States Magistrate Judge